NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELBY ROBERTS,<br><br>                    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Civil Action No. 12-4289 (SDW)<br><br>**OPINION**<br><br>May 14, 2013 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Elby Roberts's ("Plaintiff" or "Roberts") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Richard West's ("ALJ West") denial of Plaintiff's claim for Social Security Disability Insurance Benefits ("SSDI") pursuant to 42 U.S.C. § 405(g).

This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons stated herein, the final decision of the Commissioner is **REVERSED**, and the matter is **REMANDED** for further proceedings consistent with this opinion.

**FACTUAL HISTORY**

**A. Personal and Employment History**

Plaintiff was born on June 15, 1957. (R. 15, 27.) He received an Associate's Degree in architectural technology in September 1978. (R. 27, 124.) Plaintiff worked for the City of Newark as a special police officer from 1983 to 1991 and as a regular police officer from 1991 to 1993.[1] (R. 28.) Plaintiff resigned from the police force in good standing in order to "open up [his] own trucking contracting business." (R. 28.) After his business "went bad," Plaintiff held numerous other jobs, including "police armed security work, truck driving work . . . driving buses, [and] operating heavy equipment." (R. 29.) Plaintiff's last job was as a truck driver for Short Hills Catering. (R. 29.) In October 2003, Plaintiff stopped working for Short Hills Catering "[d]ue to [his] sickness." (R. 29.) Specifically, Plaintiff complained of pains in his leg and back, and he suffered numbness in his feet and fingers. (R. 30.) Plaintiff claimed that the numbness made it difficult for him to brake and shift gears. (R. 14, 30.) Plaintiff has not worked since 2003. (R. 35.)

**B. Medical History**

Plaintiff was diagnosed with diabetes approximately fifteen years ago. (R. 31.) Every three months since February 1998, Plaintiff has undergone a routine checkup at Newark Beth Israel Medical Center outpatient clinic for his diabetes. (R. 123.) He takes several medications, including Enalapril, Glipizide, Glimepride, and Metformin. (R. 14, 124, 168.) Plaintiff testified that he does not receive insulin. (R. 14.) Plaintiff also has restrictive lung disease, hypertension, and hypercholesterolemia. (R. 13.)

---

[1] Plaintiff's duties as a regular police officer included "on-the-street" patrolling. (R. 28.) The record does not reflect his duties as a special police officer.

Beginning in October 2009, Plaintiff complained of leg complications, including severe leg cramps, which prevented him from standing, sitting, or lying down for long periods of time. (R. 15, 32-33.) He asserted that these leg pains have existed for over ten years. (R. 33.) Plaintiff also complained of back pain which first appeared in the record in May 2010. (R. 15.) Both the complaints of leg cramps and back pain occurred after Plaintiff's last insured date in December 2008. (R. 15.) Plaintiff also complained of numbness and tingling in his feet when standing and walking. (R. 36.)

Plaintiff was evaluated by several state agency examiners. On November 13, 2008, Dr. Nancy Simpkins ("Dr. Simpkins") evaluated Plaintiff and concluded that "claimant is not functionally limited by either his type II [diabetes] or his cholesterol." (R. 190.) In June 2009, Plaintiff was evaluated by Dr. Augustin. (R. 14, 193-95.) Dr. Augustin found that Plaintiff could perform gross and fine manipulations, had mild restrictive airway disease, no musculosketal limitations, normal neurological findings, a glucose level of 146, a normal electrocardiogram, normal pulmonary arteries, and clear lung fields. (R. 15.) Dr. Augustin reported that Plaintiff's primary complaint was for dysphagia, although this first appeared in the record in February 2009, after the last insured date. (R. 15.)

C. Testimonial History

Plaintiff testified that his legs cramp up at night and that his medication causes him to suffer cold sweats. (R. 32-33.) Plaintiff also complains of dry mouth. (R. 33.) He testified that he cannot walk a block, stand, sit, or lie down for a period of time. (R. 33.) Plaintiff testified that when he stands, his main concern is numbness in his feet. (R. 35-36.) Plaintiff further testified that when he sits, he suffers cramps in his back and legs. (R. 35-36.) He testified that he was prescribed Neurontin to manage the pain and numbness. (R. 36.) Plaintiff testified that he received Cortisone shots and other muscle relaxers for the pain. (R. 40-41.)

Plaintiff testified that his typical day "is down to nothing," and that he is "locked in the house." (R. 41.) Plaintiff stated that his wife helps him wash his face because he cannot hold a towel. (R. 42.) Further, he stated that his wife's grandfather prepares breakfast and lunch for him. (R. 42.) He has trouble buttoning his shirts, zipping his jackets, typing on the computer, and signing his name because of the numbness in his fingers. (R. 43-45.) Plaintiff testified that he can only sleep for three or four hours at a time. (R. 43.) Plaintiff also testified that he is in increased pain in bad weather, such as rain and cold. (R. 48-49.)

Plaintiff testified to taking the following medications every day: 3,000 milligrams of Glucotrol, two ten-milligram pills of Glucophage, high blood pressure medication, muscle relaxers, and Bayer aspirin. (R. 47.) His wife's grandmother also checks his blood sugar twice a day. (R. 47-48.)

On November 20, 2010, ALJ West sent written interrogatories to the Vocational Expert, Rocco J. Meola ("VE Meola"). (See R. 177-81.) In his written answers to the interrogatories, VE Meola noted that Plaintiff could not perform his past relevant work given his injuries. (R. 179.) VE Meola opined, however, that there are several jobs that exist in the national economy that Plaintiff could perform including a sorter, inspector/packer, assembler, tabber, and decal applier. (R. 180.) VE Meola further noted that these jobs exist in the Northern New Jersey region in numbers of 1500, and in the national economy in numbers of 45,000. (R. 180.)

**PROCEDURAL HISTORY**

On July 8, 2008, Plaintiff filed an application for SSDI benefits alleging disability since January 2, 2000 due to diabetes. (R. 89-90, 102.) The Social Security Administration (the "SSA") denied Plaintiff's application initially and on reconsideration. (R. 52-53.) Plaintiff requested a hearing before an ALJ, which was held on November 2, 2010. (R. 22-51.) On December 16, 2010, ALJ West issued a decision finding that Plaintiff was not disabled. (R. 8-21.) On June 8,

2012, the Appeals Council denied Plaintiff's request for review and Plaintiff subsequently filed an appeal in the District of New Jersey. (R. 1-6.)

**LEGAL STANDARD**

In social security appeals, this Court has plenary review of the legal issues decided by the Commissioner. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Bailey v. Comm'r of Soc. Sec., 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" Bailey, 354 F. App'x. at 616 (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." Cruz v. Comm'r of Soc. Sec., 244 F. App'x. 475, 479 (3d Cir. 2007) (citing Hartranft, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. See Scott v. Astrue, 297 F. App'x. 126, 128 (3d Cir. 2008).

Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." Cruz, 244 F. App'x. at 479 (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (quoting Saldana v. Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

**DISCUSSION**

An individual will be considered disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged[.]" 42 U.S.C. § 423(d)(5)(A).

In determining disability, the SSA utilizes a five-step sequential analysis. See 20 C.F.R. § 416.920; see also Cruz, 244 F. App'x. at 479. A determination of non-disability at steps one, two, four, or five in the five-step analysis ends the inquiry. See 20 C.F.R. § 416.920. A determination of disability at steps three and five results in a finding of disability. See id. Contrarily, if an affirmative answer is determined at steps one, two, or four the SSA proceeds to the next step in the analysis. See id.

Plaintiff raises two issues on appeal: (1) ALJ West improperly evaluated the medical evidence, and (2) ALJ West erred in failing to provide cross-examination of the VE Meola and in misinterpreting VE Meola's interrogatory responses.

**A. Step One: Whether Plaintiff has performed any "substantial gainful activity"**

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). See 20 C.F.R. 416.920(b). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. See 20 C.F.R. 416.972(a). If an individual engages in SGA, he is not disabled regardless of the severity of his physical or mental impairments. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If the individual is not engaging in SGA, the ALJ proceeds to the next step. See id.

Here, ALJ West determined that Plaintiff's insured status expired on December 31, 2008 and thus he had to establish disability on, or before, this date. (R. 13.) ALJ West found that Plaintiff had not engaged in SGA since October 1, 2003, the alleged onset date of his disability. (R. 41.)

**B. Step Two: Whether Plaintiff has a "severe" impairment or combination of impairments affecting his ability to do basic work activities**

At step two, the ALJ must determine whether the claimant has a medically determinable severe impairment or a severe combination of impairments. See 20 C.F.R. 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. See 20 C.F.R. 416.921. An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. See id. If the claimant does not have a severe impairment or severe combination of impairments, he is not disabled. See 20 C.F.R. 416. 972(c). If the claimant has a severe impairment or severe combination of impairments, the analysis proceeds to the third step. See id.

At step two, ALJ West determined that Plaintiff had the following severe impairments: diabetes mellitus, restrictive lung disease, hypertension, and hypercholesterolemia. (R. 13.)

**C. Step Three: Whether Plaintiff's impairment matches or is equivalent to a listed impairment**

At step three, the ALJ must "compare the claimant's medical evidence to a list of impairments presumed severe enough to negate any gainful work." Caruso v. Comm'r of Soc. Sec., 99 F. App'x. 376, 379 (3d Cir. 2004). When a claimant's impairments meet or equal a listing, "disability is conclusively established and the claimant is awarded benefits." Knepp, 204 F.3d at 85. The Third Circuit requires the ALJ to "fully develop the record and explain his findings at step three." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000). The ALJ is required to issue more than just a conclusory statement that a claimant does not meet the listings. See Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (citing Burnett, 220 F.3d at 119-20).

Here, ALJ West determined that Plaintiff did not have impairments that matched or were equivalent to a listed impairment. (R. 13.) ALJ West explained that "[t]he record does not support a finding of neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station, or of documented acidosis occurring at least on the average of once every 2 months." (R. 13.) Additionally, ALJ West noted that Plaintiff's restrictive lung disease did not meet requirements of medical listings. (R. 13.) ALJ West thus concluded that Plaintiff did not meet or equal the applicable listings provided by the SSA. (R. 13.)

### D. Whether the ALJ properly determined Plaintiff's RFC

After step three, but before considering step four, the ALJ must first determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. § 416.920(e); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. See 20 C.F.R. § 404.1545. In making this determination, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. See 20 C.F.R. § 416.920(e), 416.945.

Here, ALJ West determined that Plaintiff "had the residual functional capacity to perform light work" with some exceptions. (R. 14.) ALJ West stated that Plaintiff "is unable to climb ladders, ropes or scaffolds, and can only occasionally climb ramps or stairs; he must avoid concentrated exposure to dust, fumes and similar occupational irritants; he must avoid hazards; he can only occasionally drive; and he can only occasionally feel/finger with the fingers of each hand." (R. 14.) In making this assessment, ALJ West reviewed and relied on a report from Dr. Augustin, a state agency consultative examiner. (R. 14, 193-95.) In June 2009, Dr. Augustin noted that Plaintiff suffered from uncontrolled diabetes and had cramps and paresthesias. (R. 14,

9

194-95.) Nevertheless, Dr. Augustin concluded that Plaintiff was able to perform gross and fine manipulations. (R. 14, 195.)

Consistent with this finding, in June 2006, Dr. Mohammad Rizwan ("Dr. Rizwan"), a state agency medical consultant, assessed that Plaintiff could: (1) occasionally lift and/or carry fifty pounds; (2) frequently lift and/or carry twenty-five pounds; (3) stand and/or walk for about six hours in a work day; (4) sit for about six hours in a work day; (5) had no limitations on pushing and/or pulling items. (R. 14, 208.) Dr. Rizwan's assessment reflected Plaintiff's reporting of parasthesias of his finger tips and lower extremities. (R. 208.) Dr. Rizwan also noted that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds. (R. 209.) However, Dr. Rizwan assessed that Plaintiff could balance, stop, kneel, crouch, and crawl frequently. (R. 209.) Similarly, in October 2008, Dr. Nancy Simpkins ("Dr. Simpkins"), another state agency medical consultant, evaluated Plaintiff and found that he was not functionally limited by his diabetes or cholesterol. (R. 190.)

Plaintiff argues that ALJ West did not properly consider all relevant evidence when evaluating Plaintiff's RFC. However, based on the analysis set forth above, this Court finds that ALJ West properly considered physicians' opinions in the record and his findings are supported by substantial evidence.

Additionally, Plaintiff contends that ALJ West erred in finding Plaintiff only partially credible. (Pl. Br. at 10.) With respect to the assessment of Plaintiff's credibility, ALJ West had the discretion to evaluate credibility in light of the evidence and to arrive at an independent judgment. LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988) (citations omitted). Here, ALJ West gave due regard to Plaintiff's testimony, but determined that it did not comport with the weight of the evidence, including the various physician reports previously discussed. (R. 594.) This Court finds that ALJ West properly made this determination.

**E. Step Four: Whether Plaintiff had the RFC to perform the requirements of his past relevant work**

At step four, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work. See 20 C.F.R. 416.920(f). "Past relevant work" means work performed within the fifteen years prior to the date that disability must be established. See id.

In this case, Plaintiff's previous relevant work experience included being a truck driver and police officer. (R. 15.) ALJ West stated that "[t]his work is performed either on a medium level, or requires functions beyond the claimant's residual functional capacity" based on the VE's interrogatory responses. (R. 15.) Accordingly, ALJ West concluded that Plaintiff was unable to perform past relevant work. (R. 15.)

**F. Step Five: Whether Plaintiff is able to do any other work considering his RFC, age, education, and work experience**

At step five, the Commissioner must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. See 20 C.F.R. § 416.920(g). If the claimant establishes the first four steps and demonstrates that his impairment prevents him from performing any of his past work, the burden shifts to the Commissioner at step five to determine whether the claimant is capable of performing alternative, substantial, gainful, activity present in the national economy. See 20 C.F.R. § 416.920(g); Kangas, 823 F.2d at 777; Malloy v. Comm'r of Soc. Sec., 306 F. App'x. 761, 763 (3d Cir. 2009). The regulations allow the use of a vocational expert in reaching this decision. See 20 C.F.R. § 404.1566(e).

The ALJ must consider whether the claimant has exertional or nonexertional limitations. See C.F.R. § 404.1569a(a). A limitation is exertional if it affects the claimant's "ability to meet the strength demands of [a job]" such as "sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. A limitation is nonexertional if it affects the claimant's "ability to meet the demands

11

of [a job] other than strength demands." Id. If the limitations are solely exertional, the ALJ can use medical-vocational guidelines to determine whether the claimant can perform any other job in the national economy. Id. Also, if the claimant retains the mental capacity to perform unskilled work, the ALJ may rely on the medical-vocational guidelines. See Davis v. Astrue, No. 08-928, 2009 WL 3241853 *at 6 (W.D. Pa. Oct. 5, 2009). However, if there are both exertional and nonexertional limitations, the ALJ cannot depend on the guidelines to determine whether there are jobs in the national economy that the claimant can perform. See Sykes v. Apfel, 228 F.3d 259, 269 (3d Cir. 2000).

Here, ALJ West found that Plaintiff could not perform his past relevant work, but could perform limited light work. (R. 15-16.) ALJ West relied on both hearing testimony and VE Meola's post-hearing written responses to interrogatories to assess Plaintiff's ability to do any work considering his RFC, age, education, and work experience. (R. 16.) For instance, as VE Meola noted, given Plaintiff's circumstances, he could have performed the occupations such as sorter, inspector/packer, assembler, tabber, and decal applier. (R. 16.)

Plaintiff argues that he "was not afforded a chance to examine the VE in person, nor review the hypothetical presented to the VE prior to their submission to the VE." (Pl. Br. at 13.) Further, Plaintiff contends that ALJ West "failed to even acknowledge the comments made by the claimant's attorney after receipt of the VE's answers." (Pl. Br. at 13.)

As the Third Circuit held in Wallace v. Bowen, in the context of social security cases, "the Secretary may not rely on post-hearing reports without giving the claimant an opportunity to cross-examine the authors of such reports, when such cross-examination may be required for a full and true disclosure of the facts." Wallace v. Bowen, 869 F.2d 187, 191-92 (3d Cir. 1989). The Third Circuit further noted that "an opportunity for cross-examination is an element of

fundamental fairness of the hearing to which a claimant is entitled under section 205(b) of the Social Security Act, 42 U.S.C. § 405(b)." Id. at 192.

In the instant matter, although no VE was present during the hearing, ALJ West posed post-hearing interrogatories to VE Meola regarding a hypothetical individual with Plaintiff's RFC and vocational factors. (R. 177-181.) VE Meola supplied answers to these written inquiries. (R. 177-181.) Plaintiff was provided with a copy of VE Meola's responses and submitted a letter to ALJ West with comments and concerns relating to VE Meola's responses. (R. 182-184.) Based on the record, it does not appear that Plaintiff had the ability to cross-examine VE Meola. (See R. 182-184.) Additionally, the record does not reflect that ALJ West considered Plaintiff's comments regarding VE Meola's answers in making his assessment. (See R. 44.) Plaintiff should be given the opportunity to cross-examine the VE in a supplemental hearing. Accordingly, this Court finds it appropriate to remand the case for further proceedings.

**CONCLUSION**

For the foregoing reasons, the final decision of the Commissioner is **REVERSED**, and the matter is **REMANDED** for further proceedings consistent with this opinion.

s/Susan D. Wigenton, U.S.D.J.